**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| KAREN ZUNIGA, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00705-SDJ- |
| | § | CAN |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**RELEVANT PROCEDURAL HISTORY AND MEDICAL EVIDENCE**

On December 29, 2018, Plaintiff Karen Zuniga ("Plaintiff") filed an application for disability insurance benefits ("DIB") [TR 141], alleging an onset of disability date of November 10, 2016 [TR 141, 161]. Plaintiff filed a claim for disability benefits alleging she suffered from multiple sclerosis [TR 172]. Plaintiff also alleges on appeal that she suffers from CMI (chronic microvascular ischemic) [Dkt. 12 at 2]. Plaintiff's application does not reference CMI as a basis for disability (nor was such alleged condition raised elsewhere before the Commissioner, such as at Hearing). Plaintiff was born on June 27, 1963, making her fifty-three (53) years of age at the time of alleged onset and fifty-seven (57) years of age at the time of the ALJ's decision [TR 22, 141]. Plaintiff's age classification at alleged onset was that of a "person closely approaching advanced age." *See* 20 C.F.R. §§ 404.1563, 416.963. Plaintiff has at least a

high school education [TR 22, 32]. Plaintiff has prior work experience as a medical assistant [TR 163]. Plaintiff has not engaged in substantial gainful activity since November 10, 2016, the alleged date of onset [TR 172].[1] Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2021 [TR 161].

Plaintiff's application was denied by notice on July 15, 2019 [TR 66] and again upon reconsideration on December 17, 2019 [TR 73]. Plaintiff requested an administrative hearing ("Hearing") [TR 76-77], which was held before an Administrative Law Judge ("ALJ") on December 7, 2020 [TR 99, 28-46].[2] At Hearing, Plaintiff and a vocational expert ("VE") presented testimony [TR 28-46]. Plaintiff also had an appointed non-attorney representative at Hearing [TR 28; 31; 135-36]. On December 31, 2020, the ALJ issued an unfavorable decision denying Plaintiff's application [TR 12-27]. After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluations [TR 15-23]:[3]

At step one, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2021, and that Plaintiff has not engaged in substantial gainful activity since November 10, 2016—the alleged onset date [TR 17]. At step two, the ALJ found Plaintiff has

---

[1] Plaintiff worked after the alleged onset date, but this work activity did not rise to the level of substantial gainful activity [TR 17, 145].

[2] Hearing was held by telephone due to the extraordinary circumstances presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. Plaintiff and her representative voluntarily agreed to a telephone hearing and were informed that all reasonable precautions were taken to ensure the privacy of the proceedings [TR 15].

[3] Under the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform his past work. § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability; the burden shifts to the Commissioner at the last step. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

severe impairment of multiple sclerosis [TR 17]. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926) [TR 17-21]. Listing section 11.09 for multiple sclerosis was expressly considered [TR 18]. The ALJ found the relevant medical evidence of record did not establish a listing level impairment under this section [TR 18]. At step four, the ALJ determined Plaintiff has the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps or stairs; and must avoid exposure to unprotected heights and dangerous moving machinery.

[TR 21]. Relevant herein, in connection with step four, the ALJ made the following findings related to Plaintiff's neurologist:

> The claimant's neurologist Dr. Lynn Wang, MD, signed a family medical leave act (FMLA) form for the claimant's husband take intermittent leave 2 or 3 days each month from his job at Southwest Airlines from April 2019 to April 2020 in order to provide transportation, psychological support, and help with daily activities due to the claimant's multiple sclerosis, and also signed a form and provided a note for the claimant to get a Texas permanent disability parking placard for a "mobility related illness" as defined by the Texas Motor Vehicle Code (Exhibit 4F/7-10). These documents are not persuasive because they do not contain a functional assessment of the claimant, and are not consistent treatment records, including treatment records from Dr. Wang, showing consistently grossly normal physical examination findings (Exhibits 2F; 4F, and 8F).

[TR 20-21]. Continuing the step four analysis, the ALJ found Plaintiff is able to perform past relevant work, both as actually and generally performed [TR 21]. Notwithstanding, the ALJ went on to step five, where the ALJ made an alternative finding that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy"

[TR 22].  Thus, the ALJ concluded Plaintiff has not been under a disability, as defined in the Act, from November 10, 2016, through the date of the ALJ's decision on December 31, 2020 [TR 22].

On February 6, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 7].  The only issues identified to the Appeals Council were whether the ALJ's decision was constitutionally defective and whether the ALJ failed to address Plaintiff's alleged CMI [TR 221-224].  The Appeals Council denied Plaintiff's request on July 29, 2021, making the decision of the ALJ the final decision of the Commissioner [TR 1-3].  On September 11, 2021, Plaintiff filed the instant suit [Dkt. 1].  On November 24, 2021, the Commissioner filed the Certified Administrative Record [Dkt. 9].  On December 23, 2021, Plaintiff filed her Opening Brief [Dkt. 12], the Commissioner filed its Brief in Support of the Commissioner's Decision on March 21, 2022 [Dkt. 15], and on April 1, 2022, Plaintiff filed her Reply Brief [Dkt. 16].

### Plaintiff's Relevant Medical Records

Of importance to Plaintiff's issues on appeal are the medical records of Plaintiff's treating physician, Dr. Lynn Wang, M.D. ("Dr. Wang") [TR 289-91, 321-22, 326-28] and Texas Health Family Care records.

### a.  Texas Health Family Care Records

On September 1, 2016, at a well-woman visit with Texas Health Family Care, Plaintiff self-reported "occasional achiness and sore muscles" [TR 241].  The physician found present joint pain, muscle pain, muscle weakness, and physical disability (walks with limp) due to Plaintiff's muscular sclerosis [TR 242]. There were no reports of anxiety, depression, dizziness, fainting, or numbness or weakness in extremities [TR 242].  On January 13, 2017, Plaintiff sought treatment after fainting; no other issues were reported [TR 235].  The physician noted "slight awkwardness to gait from MS, chronic and unchanged" [TR 236].  On May 18, 2020, Plaintiff sought treatment

for left hand pain and bruising after falling and landing directly on her hand [TR 387]. On examination, Plaintiff had normal gait, coordination, and reflexes, with no psychiatric abnormalities [TR 388]. On September 21, 2020, Plaintiff sought treatment for facial pain after tripping and falling at her home [TR 382]. On examination, Plaintiff had normal stability, tone, and strength; normal range of motion; no neurological deficits; normal gait; and no psychiatric abnormalities [Tr. 384-385, 416-417]. This is the most recent treatment report in the record.

### b. Dr. Wang

On April 9, 2019, Plaintiff saw neurologist Dr. Wang for a follow-up appointment. Dr. Wang had not seen Plaintiff in over a year at this visit, and Plaintiff denied any new neurological symptoms [TR 289]. On examination, Plaintiff had intact cognition, no abnormal nerve testing, normal gait, and "mild stable weight weakness of right leg" with a slightly increased deep tendon flex [TR 290-291]. Dr. Wang found Plaintiff's MS was "relatively stable," "with no clinical evidence to suggest MS exacerbation" [TR 291]. Plaintiff also denied any issues with depression or anxiety [TR 290]. During this visit, Dr. Wang completed an application for Plaintiff to receive a permanent disability placard "due to a mobility (lifelong) related illness medical condition as defined by the Texas Motor Vehicle Code" [TR 326]. Plaintiff's counsel suggests that this application constitutes a finding by Dr. Wang that Plaintiff could only walk 200 feet given the underlying Transportation Code definitions [Dkt. 12 at 3]. Additionally, Dr. Wang also completed a Leave Application on behalf of Plaintiff's husband to submit to his employer opining that Plaintiff's medical history rendered it medically necessary for Plaintiff's husband to be absent from work intermittently or work less than a full schedule to care for Plaintiff during flare-ups of her condition [TR 327-28]. On the application, Dr. Wang indicated that Plaintiff would have an episode "two to three days a month" [TR 328].

On July 14, 2020, Plaintiff had her annual follow-up visit with Dr. Wang via telemedicine [TR 321]. Dr. Wang reported that Plaintiff was "doing fine, occasionally has some falls" and "easily trips" [TR 321]. Plaintiff complained of weakness, but denied headaches, numbness, memory loss, slurring, or tremors [TR 322]. Overall, Dr. Wang reported her condition to be "relatively stable" with no clinical evidence to suggest MS exacerbation [TR 322].

### *Hearing Testimony*

On December 7, 2020, the ALJ held a hearing [TR 28-46]. At the outset of Hearing, the ALJ confirmed with Plaintiff's representative that the record was complete [TR 31]. At Hearing, Plaintiff testified regarding her impairments and limitations [TR 28-46]. She experiences symptoms from her MS sporadically and takes a prescribed MS medication, which slows down the progression of the disease [TR 38]. Since ceasing employment, Plaintiff does the dishes, cleans, does laundry, dusts, and plays with her grandchildren [TR 35]. Plaintiff reported that she typically does not go out unless she is accompanied by her husband or daughter because of her tendency to fall "at least once, twice a week" outside of the house [TR 36-37]. Plaintiff has sustained bruises on prior falls, but noting that if she is inside her house, she does not seem to fall as much [TR 37]. Plaintiff testified that she experiences issues with coordination, her vision, problems urinating despite feeling like her bladder is full, and retaining information [TR 38]. The coordination issues mainly affect Plaintiff's hands, and reflexes in her foot [TR 19]. Plaintiff does not drive on highways because she does not trust her reflexes, or at night, but she does drive during the day to locations near her house and around town [TR 42].

Vocational Expert Nicole King ("VE") offered testimony at Hearing in response to hypotheticals posed by the ALJ [TR 42-46]. The ALJ presented the following hypothetical to the VE:

> Assume a hypothetical individual who is able to perform the full range of work at all exertional levels. Is able to occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. Must avoid exposure to unprotected heights and dangerous, moving machinery. Can such a hypothetical individual perform Claimant's past work?

[TR 43].  The VE testified that such an individual could perform the position of medical assistant (as to both actually and generally performed) (DOT 079.362-010, SVP of 6, classified as light) [TR 43].  The VE further testified that such a hypothetical person could also perform other work, including janitor (DOT 389.683-010, SVP of 2, classified as medium), hand packager (DOT 920.587-018, SVP of 2, classified as medium), and kitchen helper (DOT 318.687-010, SVP of 2, classified as medium) [TR 44]. The ALJ then presented a second hypothetical to the VE:

> Assume a hypothetical individual who's able to lift 20 pounds occasionally and lift and carry 10 pounds frequently and push and pull the same. Is able to walk and stand six hours per eight hour workday and sit for six hours per eight hour workday with normally scheduled breaks. Able to occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. Must avoid exposure to unprotected heights and dangerous, moving machinery.  Could such a hypothetical individual perform Claimant's past work?

[TR 44]. The VE testified that the individual could still perform the position of medical assistant [TR 44]. Finally, the ALJ posed a third hypothetical:

> Assume the same hypothetical individual as my prior two hypotheticals however adding the following additional limitation.  Due to physical impairment and associated fatigue and weakness, requires two unscheduled 20 minute breaks each workday in addition to normally scheduled breaks. Can such a hypothetical individual perform Claimant's past work or other work?

[TR 44-45].  The VE said the individual would not be able to perform Plaintiff's past or other work.  Upon examination of the VE, Plaintiff's representative confirmed that the VE did not consider any limitations beyond those given to her by the ALJ in either the first or second hypothetical [TR 45].  Plaintiff's representative asked, "if we added to both hypothetical number one and hypothetical number two, a person would need to miss two to three days per month on

average, would such a person be able to do any of the work described?" [TR 45].  The VE responded, "No, that would eliminate all of those jobs as well as any other competitive employment" [TR 45].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment.   42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff alleges three issues for review, stated as follows: (1) whether the ALJ erred by not properly evaluating Plaintiff's MS, (2) whether the ALJ erred by not properly evaluating the opinion evidence, (3) whether the ALJ failed to include established mental and physical limitations in Plaintiff's RFC [Dkt. 12 at 1].[4]

### *The ALJ Properly Developed the Record*

At the outset, Plaintiff contends this case is a medically complicated case, and that the SSA admitted that a consultative examination was required [Dkts. 12 at 4; 16 at 5-6]. In support of this contention, Plaintiff urges that the SSA falsely claimed Plaintiff failed to send in her Work History Report and Function Report, and that the record shows Plaintiff did in fact send in these documents [Dkt. 12 at 4]. Notably, neither Plaintiff nor Plaintiff's representative raised the issue at Hearing that the record was incomplete or in need of further development. Indeed, Plaintiff's representative concurred with the ALJ that the record was complete in this case [TR 31]. *See Gonzalez v. Barnhart*, No. 02-50270, 51 Fed. App'x 484 (5th Cir. 2002) (finding no failure to develop record where ALJ inquired whether plaintiff desired to present additional evidence). And while the ALJ has discretion to order a consultative examination, a CE at government expense is not required unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision. *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *8 (5th Cir. 2005).[5] Here, Plaintiff only postulates that a further medical opinion would change the ALJ's findings:

---

[4] Plaintiff withdrew from consideration her further point of alleged error—whether the ALJ's decision was constitutionally defective because he derived his authority from Commissioner Saul whose appointment violated the separation of powers [See Dkt. 16 at 1].

[5] "The Fifth Circuit [ ] imposes a duty on an ALJ 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). "To determine whether the ALJ fully and fairly developed the record, the Court asks whether

> As just discussed, the ALJ rejected both opinions from the treating neurologist. Yet, the ALJ never arranged for Ms. Zuniga to have a CE performed despite the Agency itself admitting that a CE was required here. Therefore, the ALJ's decision mostly rests upon his own lay judgment.  This was another independent legal error.

[Dkt. 12 at 8-9].  "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).  Plaintiff fails to show further development of the record was necessary for the ALJ to make a disability decision.[6]  *See Reynolds v. Saul*, No. 3:20-cv-97-JMV, 2021 WL 2371343, at *2 (N.D. Miss. June 9, 2021) (finding conditions for ordering a CE not met where the evidence in the record showed consistent exam findings related to plaintiff's impairment).

### Plaintiff's Alleged CMI Diagnosis

Plaintiff also tangentially argues that the ALJ failed to properly assess the limitations in her functioning, in part due to her CMI diagnosis, and the failure to consider the impact her CMI has upon her MS [Dkt. 12 at 11].  Upon careful review of the entire medical record, the Court cannot find any documented medical evidence of Plaintiff suffering from CMI.  Plaintiff did not allege CMI in her application nor did she allege it at Hearing.  Plaintiff avers that there is a brain MRI that confirms her CMI [Dkt. 16 at 4]; however, Plaintiff fails to cite where this evidence is in the record.  Plaintiff's argument alone—absent objective medical evidence—is not enough to substantiate such alleged condition.

---

the record contained sufficient evidence for him to make an informed decision. So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." *Goforth v. Commissioner*, No. 6:14-cv-591, 2016 WL 878323, at *2 (E.D. Tex. Mar. 8, 2016) (citing *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing 20 C.F.R. §§ 404.1516, 416.916).  Generally, however, the duty to obtain medical records (in the first instance) is on the claimant.  *See Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981).

[6] "[The] Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  To establish prejudice under these circumstances, "a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'"  *Id.* (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)); *Goforth*, 2016 WL 878323, at *2 (citing *Ripley*, 67 F.3d at 557)) (explaining that reversal for "failure to develop the record" is appropriate "only where the claimant shows prejudice").  Plaintiff has failed to show prejudice.

***Substantial Evidence Supports the ALJ's RFC Assessment***

Generally, the RFC finding reflects a disability claimant's maximum remaining ability to perform work activities despite his or her medically determinable impairments.  20 C.F.R. § 404.1545(a).  The ALJ must avoid "playing doctor and making [his] own independent medical assessment." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990)).  However, the Fifth Circuit has also emphasized that it is not the Court's intent to require the Commissioner to obtain the RFC finding directly from a medical opinion, thereby nullifying the ALJ's role as fact-finder.  *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016).  Indeed, the ALJ has sole responsibility for determining a claimant's RFC.  *Newton v. Apfel*, 209 F.3d at 455-56; *Ripley*, 67 F.3d at 557.  To that end, the task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  The ALJ is not confined to picking one opinion and adopting it.  *G.K.C. v. Soc. Sec. Admin.*, No. 14-cv-0999, 2016 WL 1035393, at *2 (W.D. La. Feb. 24, 2016), *report and recommendation adopted*, No. 14-0999, 2016 WL 1045564 (W.D. La. Mar. 15, 2016).  "Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source." *Id.*  No doctor's opinion is, alone, conclusive as to the RFC, and "the ALJ's RFC assessment need not match with precision to any medical source opinion." *Cunningham v. Astrue*, No. 2:10-cv-01216-BSJ, 2011 WL 3651026, at *7 (D. Utah Aug. 17, 2011).

Plaintiff raises multiple issues related to the ALJ's assessment of Plaintiff's RFC.  First, Plaintiff avers that the ALJ should have assessed, and included in Plaintiff's RFC, limitations in her motor and cognitive functioning stemming from Plaintiff's MS symptoms [Dkt. 12 at 5-6, 9-11].  Next, Plaintiff argues that the ALJ erred in rejecting Dr. Wang's opinion evidence that Plaintiff was unable to walk more than 200 feet without having to stop and rest and that her MS flared up two to three days a month [Dkt. 12 at 7-8].  Plaintiff further argues the record supports other work restrictions that the ALJ failed to address, such as unscheduled bathroom breaks, padded work-stations, off task time, unscheduled days off, and reductions to the amount of time walking and standing [Dkt. 12 at 9-11].  The Commissioner in response argues that "while Plaintiff presents these arguments in three separate sections, the arguments address the same issue:  whether the ALJ should have assessed a greater degree of limitation in the [RFC] assessment" [Dkt. 15 at 14, n.3].  To this, the Commissioner rejoins the ALJ properly relied on the objective medical evidence, which showed that Plaintiff's MS was controlled, and that she had consistently normal clinical and neurological findings on examination [Dkt. 15 at 14].

### *ALJ's Evaluation of Plaintiff's Subjective MS Symptoms*

Plaintiff argues that the ALJ's symptom analysis was flawed.  In evaluating a plaintiff's subjective evidence and credibility, the ALJ is required to follow a two-step process.  *See* 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3P, 2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017).[7]  First, the ALJ must determine "whether there is an impairment that reasonably produce[s] the symptoms of

---

[7] Effective March 2017, the Social Security Administration issued Social Security Ruling 16-3p, which eliminated the "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character."  *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  It instructs ALJs to determine "the extent to which ... symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and simply shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record.  *See Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *6 (N.D. Tex. Feb. 10, 2017).  While SSR 16-3p explicitly supersedes SSR 96-7P, "it is evident that the change brought about by SSR 16-3p was mostly semantic."  *Id.* at *7 (collecting cases).

which the claimant complains." *Guillory v. Saul*, No. 1:19-cv-632, 2021 WL 1600283, at *9 (E.D. Tex. Apr. 23, 2021). "If the [ALJ] finds no impairment, the plaintiff is not disabled." *Id*. If the ALJ identifies an impairment, the ALJ then considers the plaintiff's statements regarding his or her symptoms and the "remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the [plaintiff's] ability to do basic work." *Id*.

Here, Plaintiff urges the ALJ failed to properly consider her MS symptoms; specifically, her physical symptoms of falling, awkward gait, increased weakness in her right leg, tripping easily, and cognitive symptoms of "loss concentration, memory issues, fatigue, insomnia, dizziness, and headaches." [Dkt. 12 at 5-7]. Plaintiff alleges the ALJ did not carry her acknowledged physical symptoms throughout the sequential evaluation process and never even mentions her cognitive symptoms in his decision [Dkt. 12 at 5].

The Court addresses this final point first. The ALJ's determination included a thorough summary of the cognitive symptoms Plaintiff listed in her function report and described at Hearing [TR 19]. Moreover, Plaintiff's highlighted cognitive symptoms simply do not substantially differ from the ALJ's summary; indeed, Plaintiff's argument is largely semantic. To that end, consider: Plaintiff alleges the ALJ did not address Plaintiff's loss of concentration or memory issues [Dkt. 12 at 5], but the ALJ's decision expressly references Plaintiff's allegation that she can become mentally exhausted and be unable to retain information [TR 19 ("She explained … [that] she can become mentally exhausted and be unable to retain information.")]. Additionally, to the extent Plaintiff asserts that an ALJ must scour a Plaintiff's medical history and address every symptom ever mentioned to a treatment provider during the relevant period, no such duty exists.

A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record. *Gonzales v. Kijakazi*, SA-20-cv-00498, 2021 WL 3783242, at *6

(W.D. Tex. Aug. 25, 2021) ("Where there are inconsistencies between the claimant's alleged limitations and the evidence as a whole, an ALJ may reasonably discredit the testimony."). Here, the objective medical findings and medical history reflect little in the way of limiting symptoms on an ongoing basis, either physically or mentally. Indeed, after the onset of Plaintiff's disability, Plaintiff reported that she "feels well with no complaints, has good energy level, and is sleeping well," that it had "been a long time since her last [MS] flare up," and that her current medication worked well for episodes of pain (i.e., occasional achiness and sore muscles) [TR 241-43]. A few months later, in January 2017, Plaintiff sought treatment after fainting; no issues were reported and physical examination showed normal judgment and thought content, slight awkwardness in gait, and normal muscle tone and coordination [TR 234-36]. On September 20, 2017, Plaintiff sought treatment for a urinary tract infection and a physical examination showed alert mental status with no psychiatric abnormalities, normal coordination and gait, and normal muscle mass and tone [TR 232-233]. Plaintiff returned on October 11, 2017, reporting that the urinary tract infection continued; Plaintiff told her treatment provider that she had some flank pain, but she had also "started a new exercise program and doing a lot of plank positioning" [TR 228]. However, physical examination showed alert mental status with no psychiatric abnormalities, normal coordination and gait, and normal muscle mass and tone [TR 228- 29]. On April 9, 2019, Plaintiff saw neurologist Dr. Wang; Dr. Wang noted that she had not seen Plaintiff in over a year, and that Plaintiff told her she had been "in Ohio to take care of her dad" [TR 289]. Plaintiff denied any new neurological symptoms, and on examination, Plaintiff had intact cognition, no abnormal nerve testing, normal gait, and "mild stable weight weakness of right leg" with a slightly increased deep tendon reflex [TR 289-91]. Dr. Wang stated that Plaintiff's MS was "relatively stable," with "no clinical evidence to suggest MS exacerbation" [TR 291]. On May 18, 2020, Plaintiff sought

treatment for left hand pain after falling and landing on her hand; on examination, Plaintiff had normal gait, coordination, and reflexes, with no psychiatric abnormalities [TR 387, 390, 306, 409]. Dr. Wang next saw Plaintiff on July 14, 2020; Plaintiff reported that she was "doing fine, occasionally she has some falls, she easily trips" [TR 321-322, 424-425]. Dr. Wang concluded that Plaintiff "is relatively stable, there is no clinical evidence to suggest MS exacerbation," and advised Plaintiff to return in one year [TR 322]. And most recently, on September 21, 2020, Plaintiff sought treatment for facial pain after tripping and falling at her home; on examination, Plaintiff had normal stability, tone, and strength; normal range of motion; no neurological deficits; normal gait; and no psychiatric abnormalities [TR 382, 384-85, 413, 416-17]. The totality of Plaintiff's objective medical records evinces consistently normal clinical and neurological findings on examination [TR 232, 322, 413, 425].

The ALJ properly examined this objective medical evidence and Plaintiff's claimed symptoms (and the discrepancies between the same) in reaching a determination:

> The claimant alleges disability due to the impairment of multiple sclerosis (Exhibit 2A/2). She claims that the symptoms and limitations from this impairment cause her difficulty with lifting, squatting, bending, standing, reaching, walking, kneeling, talking, climbing stairs, seeing, memory, completing tasks, concentration, understanding, following instructions, and using her hands (Exhibit 7E/6).
>
> The claimant testified that she is unable to work due to the symptoms of her multiple sclerosis. She explained that her symptoms are sporadic with good days and bad days, and she can become mentally exhausted and be unable to retain information. She stated that problems with reflexes in her foot cause her to fall, and that it has happened frequently over the past year, noting that she was nursing a bruise on her face from a fall in the bathroom months earlier. She said other symptoms from her multiple sclerosis include problems with coordination, vision, and urinary retention, and that she is able to do some household chores such as dishes, but only for 15 minutes before requiring 15 minutes rest. The claimant stated that she does not drive on the highway or at night because she does not trust her reflexes, but does drive to doctors' appointments and shopping around town, and that she has difficulty with coordination of her hands, noting that she is unable to button her grandchildren's shirts (Hearing Testimony).

Regarding activities of daily living, the claimant reported that her husband occasionally helps her with bathing and dressing, she is unable to prepare meals, and does a small amount of household chores such as dusting, laundry, or emptying the dishwasher (Exhibit 7E/2-3). She stated that she gets outside daily, is able to drive a car in familiar locales, and shops in stores on a weekly basis for groceries and pharmacy items (Exhibit 7E/4).

After careful consideration of the record as whole, I find that the claimant's medically determinable impairments can reasonably be expected to produce some of the alleged symptoms. ***However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms have been determined to diminish the capacity for basic work activities only to the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence of record and the above residual functional capacity. The allegations concerning the impairments and the impact on the ability to work are not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history and degree of medical treatment required, and the claimant's activities of daily living.***

[TR 19-18 (emphasis added)]. Plaintiff has not shown the ALJ erred in his analysis. The ALJ's analysis of Plaintiff's symptoms was clearly tailored to the evidence of record, properly evaluated Plaintiff's alleged symptoms, and accepted the symptom reports to the degree to which they were consistent with the objective medical evidence and other evidence of record. *See Jackson v. Comm'r*, No. 4:20-cv-01149, 2021 WL 5042479, at *4 (N.D. Tex. Sept. 20, 2021), *report and recommendation adopted*, No. 4:20-cv-01149, 2021 WL 5040229 (N.D. Tex. Oct. 29, 2021); *see also Jones v. Saul*, No. 3:19-cv-0880, 2020 WL 5752390, at *17 (N.D. Tex. Aug. 24, 2020*), report and recommendation adopted*, No. 3;19-cv-0880, 2020 WL 5747873 (N.D. Tex. Sept. 25, 2020).

### *Dr. Wang's Opinion Evidence*

Plaintiff next avers that the ALJ erred in evaluating Dr. Wang's medical opinions, specifically by failing to account for Dr. Wang's proposed work restrictions. Plaintiff alleges that Dr. Wang opined Plaintiff was unable to walk more than 200 feet without having to stop and that Plaintiff's MS would flare up two to three days a month requiring absence from work, which such restrictions are consistent with an inability to work and were not properly evaluated by the ALJ

[Dkt. 12 at 7].  Plaintiff arrives at these alleged work restrictions from (1) Dr. Wang's completion of an application to permit Plaintiff to receive a permanent disability placard for her vehicle, allowing her to park in a handicap parking space "due to a mobility (lifelong) related illness medical condition as defined by the Texas Motor Vehicle Code" [TR 326] and (2) Dr. Wang completing a Care of a Family Member Leave Application on behalf of Plaintiff's husband to submit to his employer opining that Plaintiff's medical history rendered it medically necessary for Plaintiff's husband to be absent from work intermittently or work less than a full schedule to care for Plaintiff during flare-ups of her condition [TR 327-28].

The ALJ's determination thoroughly addresses why the ALJ did not include these alleged restrictions in Plaintiff's RFC:

> The claimant's neurologist Dr. Lynn Wang, MD, signed a family medical leave act (FMLA) form for the claimant's husband take intermittent leave 2 or 3 days each month from his job at Southwest Airlines from April 2019 to April 2020 in order to provide transportation, psychological support, and help with daily activities due to the claimant's multiple sclerosis, and also signed a form and provided a note for the claimant to get a Texas permanent disability parking placard for a "mobility related illness" as defined by the Texas Motor Vehicle Code (Exhibit 4F/7-10). ***These documents are not persuasive because they do not contain a functional assessment of the claimant, and are not consistent treatment records, including treatment records from Dr. Wang, showing consistently grossly normal physical examination findings*** (Exhibits 2F; 4F, and 8F).

[TR 20-21 (emphasis added)].  Plaintiff cites no authority for the proposition that completion of a Texas disability placard or spouse's leave application constitutes a functional assessment of a claimant.  Numerous courts have found completion of disability placards are of little relevance or are not probative to the disability analysis and that an opinion by a physician on an FMLA form is not a functional capacity assessment of a plaintiff's ability to perform work-related activities under social security law.  *See, e.g. Baker v. Saul*, No. Civ-19-253, 2020 WL 798436 (W.D. Okla. Feb. 18, 2020) (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)) ("[O]rdering of a

disability placard adds nothing to a finding of disability here because there is no evidence that the two have substantially similar requirements.... "); *Bryant v. Astrue*, No. 09-4159, 2010 WL 4628721, at *7 (D. Kan. Nov. 8, 2010) (treating physician's comment on application for a permanent disabled parking placard was not "so probative as to require discussion"); *Livingston v. Astrue*, No. 09-14202, 2010 WL 5851124, at *8 (S.D. Fla. Feb. 26, 2010) (failure to mention parking permit application was not reversible error in part because such applications are "generally of little relevance to a formal disability analysis"); *Wheeler v. Colvin*, No. 6:14-cv-34, 2016 WL 915301 (W.D. Vir. Mar. 7, 2016) (FMLA forms are not determinative of DIB or SSI; they are simply pieces of evidence); *Little v. Astrue*, No. 10-131J, 2011 WL 3555849 (W.D. Penn. Aug. 11, 2011) ("[I]t is well-settled that the Commissioner is to make disability determinations based on social security law and therefore an opinion from a treating source that an individual is disabled rendered on an FMLA form is not binding [i]n fact, neither Dr. Sabo nor Dr. Jaramillo ever completed a residual functional capacity assessment of plaintiff's ability to perform work-related activities under social security law").  Moreover, the referenced treatment records, Exhibits 2F, 4F, and 8F, as the ALJ delineates, show consistently normal physical examination findings and do not support the level of disability alleged in the placard or FMLA form.  On April 9, 2019, Plaintiff had intact cognition, no abnormal nerve testing, normal gait, and "mild stable weight weakness of right leg" with a slightly increased deep tendon reflex [TR 289-91].  Dr. Wang stated that Plaintiff's MS was "relatively stable," with "no clinical evidence to suggest MS exacerbation" [TR 291].  On May 18, 2020, Plaintiff had normal gait, coordination, and reflexes, with no psychiatric abnormalities [TR 387, 390, 306, 409].  Dr. Wang next saw Plaintiff on July 14, 2020; Plaintiff reported that she was "doing fine, occasionally she has some falls, she easily trips" [TR 321-322, 424-425].  Dr. Wang concluded that Plaintiff "is relatively stable, there is no clinical

evidence to suggest MS exacerbation," and advised Plaintiff to return in one year [TR 322]. And, at Hearing, following Plaintiff's representative's reference to the FMLA form, the ALJ inquired whether Plaintiff was driving now, to which she responded "Yes, but … not on the highways" [TR 40, 42]. Plaintiff went on to specifically reference driving to the grocery store and her doctor's office [TR 42]. The regulations empower the ALJ to review the evidence, assign weight to the opinions of reviewing, consulting and treating physicians, and formulate an RFC. *See G.K.C.*, 2016 WL 1035393, at *2. The ALJ's finding that this evidence was not persuasive is supported by substantial evidence.

### *Additional Work Restrictions*

Plaintiff finally suggests the ALJ should have included limitations in the RFC to account for her "proven functional limitations" such as (1) unscheduled bathroom breaks; (2) padded work stations for when she trips and falls; (3) time to be off-task due to her cognitive impairments; (4) unscheduled days off due to her MS symptoms; and (5) inability to stand and walk for even two hours per day. Yet, a review of the records reveals significant contrary medical evidence reflecting no merit to inclusion of these limitations in the RFC [TR 228-233, 236, 241, 289-292, 308, 321-22, 382, 384-85, 387, 390-413, 425].[8] The ALJ's determination details:

> Neurology records from April 9, 2019 show a follow-up visit for multiple sclerosis, noting that the last visit was a year earlier (Exhibit 2F/1). The claimant denied any new symptoms, with review of systems showing complaint of weakness, and otherwise negative, and physical examination findings noting mild stable weight weakness with slightly increased deep tendon reflexes of the right leg, and otherwise within normal limits (Exhibit 2F/2-3). The claimant's neurologist diagnosed the claimant with multiple sclerosis, relatively stable, with no clinical

---

[8] The Court does not exhaustively walk through each piece of contrary evidence. Illustrative of the contrary evidence, which supports the RFC, the Court notes as to the need for unscheduled bathroom breaks, an August 2019 urodynamics study led to no specific need for treatment, and Plaintiff's urinary tract infections did not persist (they were merely episodic) [TR 228-233; 308]. *Leaverton v. Colvin*, No. 11-CV-778-FHM, 2013 WL 1316901, at *3 (N.D. Okla. Mar. 29, 2013) (affirming where "the ALJ observed that none of Plaintiff's treating physicians indicated he had functional limitations that would preclude sedentary work. While the ALJ did not specifically discuss Plaintiff's allegations of frequent bowel and urinary urgency, the court notes that the medical records reflect these complaints have been episodic"). Plaintiff admitted at Hearing she did not use a cane despite alleged ambulation difficulties [TR 18, 39].

evidence to suggest exacerbation of multiple sclerosis, and recommendations to check blood work, continue on Gilenya, and schedule a follow-up appointment in one year (Exhibit 2F/3).

Treatment notes from 18, 2020 show a visit for left-hand pain and bruising; the claimant reported she fell and landed directly on her hand (Exhibit 6F/16). Review of systems were otherwise negative, with physical examination finding the claimant with blood pressure 110/72, and remaining findings normal, including normal gait, coordination, reflexes, and memory (Exhibit 6F/18-19). The claimant was assessed with a closed nondisplaced fracture of the base of the 5th metacarpal bone of the left-hand, based upon radiological evidence (Exhibits 6F/20; 7F/2).

The claimant's next neurology appointment on July 14, 2020 was carried out by telemedicine (Exhibits 4F/1 and 8F/3). The claimant reported she did not check blood work as recommended as the prior office visit, but said she was doing fine, although she easily trips and occasionally has some falls (Exhibit 4F/1 and 8F/3). Review of systems noted complaints of weakness, and was otherwise negative, with neurological examination findings normal, and assessment of multiple sclerosis, relatively stable, with no clinical evidence to suggest exacerbation of multiple sclerosis, recommendation to continue medication, and to check blood work, with follow-up scheduled in a year (Exhibit 4F/2 and 8F/4).

Treatment notes from September 21, 2020 indicate an office visit after the claimant fell at home and struck the left side of her face (Exhibit 6F/11). The claimant reported no loss of consciousness, sequela, or headache, with physical examination finding the claimant with blood pressure 132/79, with remaining findings normal, including normal gait, coordination, reflexes, muscle strength and tone, normal stability, normal memory, insight, and judgment, and no pain or limitations in range of motion, and the claimant was assessed with a facial contusion (Exhibits 6F/12-15; and 7F/12-14).

[TR 20]. While Plaintiff repeatedly points to her MS diagnosis as reason enough to provide the bulk of these limitations in her RFC, she fails to carry her burden in demonstrating that she required the limitations. *Sollien v. Colvin*, No. 3:13-cv-970, 2014 WL 1012515, at *6 (N.D. Tex. Mar. 14, 2014) ("[T]he diagnosis of a condition, by itself, is not evidence of a functional limitation."); *Smith-Cournyer v. Astrue*, No. 5:09-cv-223, 2010 WL 3781560, at *6 (M.D. Fla. Sept. 23, 2010) ("The ALJ was not required to include limitations caused by Plaintiff's urinary incontinence in the hypothetical because, as discussed above, the ALJ properly determined Plaintiff's claims regarding urinary incontinence were not credible—and Plaintiff failed to show that her urinary incontinence

caused any limitations beyond those set out in the RFC assessment."). "In all but the rarest cases of extraordinary evidentiary clarity, a certain amount of medical evidence will always exist that could theoretically support a different RFC determination." *Jackson*, 2021 WL 5042479, at *4. "The Court's job is not to reweigh the evidence nor second guess the Commissioner, but only to ensure that substantial evidence supported his decision." *Id.* The Court finds that substantial evidence supported the ALJ's determination in Plaintiff's case.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is recommended the Commissioner's decision be **AFFIRMED.**

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 6th day of July, 2022.**

REPORT AND RECOMMENDATION – Page 21

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE